IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTONIO R. TRUJILLO,

Plaintiff,

vs. CIV 14-0012 KBM

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing (*Doc. 17*) filed on September 25, 2014, and fully briefed December 9, 2014 (*Doc. 20).* Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Doc. 9*. Having carefully reviewed the parties' submissions and the administrative record, the Court denies the motion to remand and dismisses this action with prejudice.

## I. Background and Procedural History

Plaintiff is a 26-year old man with an 11th grade education who has not yet earned a GED. AR 37, 389-436.[1] Plaintiff received disability benefits as a minor due to attention-deficit/hyperactivity disorder, which ceased when he turned eighteen-years-old. AR 33. Plaintiff has a history of working as a dishwasher, a cook, counter help, janitorial engineer, and retail stocker. AR 34-35, 202, 429, 430. Most recently he worked

[1] Documents 12-1 through 12-17 comprise the sealed Administrative Record ("AR"). When citing the record, the Court cites the AR's internal pagination, rather than the CM/ECF document number and page.

for Golden Pride as a dishwasher, but left that position after two and a half years, in March of 2010, because he was not getting enough hours and felt he was being treated unfairly. AR 34-35, 202.

Plaintiff filed for disability benefits as an adult alleging disability beginning April 1, 2010.[2] AR 30, 119-126. His application was denied at both the initial and reconsideration stages, and he requested a hearing before an administrative law judge (ALJ). AR 50 – 53, 66-76. ALJ Ann Farris held a hearing on April 24, 2012, and issued her decision on June 29, 2012. AR 12-21, 26-49.

Using the five-step sequential evaluation process,[3] ALJ Farris found: at Step One, Plaintiff was not engaged in substantial gainful activity; at Step Two, Plaintiff had severe impairments, including borderline intellectual functioning, polysubstance abuse, anxiety, and depression (AR 14); at Step Three, these impairments, did not meet or medically equal the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C. F. R. 416. 920(d)); at Step Four, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with some nonexertional

[2] Plaintiff's application alleged an onset date of January 1, 2010, (AR 119), but this date was amended to April 1, 2010, at the hearing (AR 30).

[3] Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520. Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. § 404.1520(C). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If the claimant does not meet a listing, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step-Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

limitations, and that he would be able to perform his past relevant work. AR 14-21. Although ALJ Farris found that Plaintiff was capable of performing his past relevant work, she further determined that "there are other jobs existing in the national economy that he is also able to perform." AR 20. Accordingly, she concluded Plaintiff was not disabled within the meaning of the Social Security Act. AR 21. Plaintiff's request that the Appeals Council review the unfavorable decision was denied, leaving the ALJ's decision as the final decision of the Commissioner. AR 1-6.

## II. <u>The Claims</u>

Plaintiff asserts the following claims of error by the ALJ: 1) finding that he does not meet Listing 12.05(C); 2) failing to develop the record by not ordering additional cognitive testing; and 3) failing to include all mental limitations in his RFC. *Doc. 17*.

## III. <u>Standard of Review</u>

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."

*Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) and *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988)) (brackets in original).

The Court's review is based on the record taken as a whole, and the Court will "meticulously examine the record in order to determine if the evidence supporting the

agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight. '" *Id*. (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). This Court may not reweigh the evidence nor substitute its opinion for that of the Commissioner. *Id.* at 1214.

## IV. <u>Discussion</u>

### A. <u>Step Three Listings</u>

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Plaintiff has the burden at Step Three to establish that his impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some . . . criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

Plaintiff contends that ALJ Farris erred by failing to properly assess whether he met Listing 12.05, which defines Intellectual Disabilities. To satisfy Listing 12.05, a claimant's burden is twofold: first, he must meet the requirements of that listing's capsule definition; second, he must meet one of the four severity prongs listed in the regulations. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (internal quotation marks and brackets omitted). The capsule definition for Listing 12.05 states:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05. The severity prong at issue here

requires:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05(C).

In her decision ALJ Farris does not make any findings in her Step Three analysis with regard to the capsule definition.[4] Instead, she simply states, "I have also considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." AR 16. The ALJ did not discuss the evidence that supports her conclusion that Plaintiff did not meet Listing 12.05(C), which is error. *See Peck v. Barnhart*, 214 F. App'x 730, 734-35 (10th Cir. 2006) (unpublished) (finding the ALJ's "bare conclusion" beyond meaningful review); *see also, Clifton*, 79 F.3d at 1009.

This type of error at Step Three does not automatically require remand. Rather, the error is harmless when the "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005). "Those findings must 'conclusively preclude Claimant's qualifications under the listings at step three' such that 'no reasonable administrative factfinder following the correct analysis, could have resolved the factual matter in any other way.'" *Peck*, 214 F. App'x at 736 (quoting *Fischer-Ross*, 431 F.3d at 733-34).

[4] In her response, the Commissioner argues that Plaintiff did not meet the criteria of the capsule definition and, therefore, could not meet Listing 12.05. *Doc. 18*, at 4. As Plaintiff points out, this argument is a *post-hoc* justification, as the ALJ did not make any determination with regard to the capsule definition in the first instance. *See Peck v. Barnhart*, 214 F. App'x 730, 736.

At Step Four, ALJ Farris notes that a Wechsler Intelligence Scale for Children–III test in 1998 showed Plaintiff with a verbal IQ of 70. AR 18, 265. A Wechsler Adult Intelligence Scale–III test conducted in 2007 showed Plaintiff with a verbal IQ of 69. AR 532, 535, 538. Thus, Plaintiff meets the first prong of the paragraph C criteria in that he has a valid verbal IQ of 60 through 70.

Plaintiff asserts that he also meets the second prong. "The second prong of § 12.05C requires that the claimant have 'a physical or other mental impairment imposing additional and significant work-related limitation of function. '" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). "[A] 'significant limitation' of function for purposes of §12.05C, is one that has more than a slight or minimal effect on the claimant's ability to perform basic work," but "need not be disabling in and of itself. " *Id*. (internal quotations and citation omitted).

Plaintiff suffers from hearing loss in his left ear and injuries to his back following a 2007 car accident; however, these impairments have not resulted in a significant limitation. Education records show that by the 8th grade "Antonio's hearing sensitivity . . . remained stable and he [was] relying on his right ear for all communication." AR 276. Further, the discrepancy between his scholastic ability and achievement was not primarily the result of a hearing impairment. AR 268. At the time of the administrative hearing, Plaintiff could not recall the last time he had undergone a hearing exam (AR 39), and ALJ Farris observed that Plaintiff appeared able to understand the conversation during the proceedings without the use of a hearing aid. AR 19. With regard to his back injuries, in December of 2011, a radiologist described Plaintiff's lumbar spine as "normal" with no fracture or degenerative changes. AR 522.

No objective medical tests reveal functional limitations as a result of Plaintiff's hearing loss or back pain. Plaintiff's ability to sustain employment for over two years as a dishwasher, perform chores in the yard and around the house, spend time riding his bicycle, camping, fishing, playing football and video games for three hours at a time, further demonstrates that he does not suffer from a significant work-related limitation due to physical impairments. AR 17. Although ALJ Farris discussed these facts as a part of her Step Four analysis rather than at Step Three, no reasonable administrative factfinder could conclude that Plaintiff met the paragraph C criteria, rendering her error harmless.

Plaintiff contends that, alternatively, ALJ Farris failed to consider whether a combination of his impairments was equivalent to the Listing. *Doc. 17* at 12. If a claimant's impairment does not meet the criteria specified in the listings, he or she is still disabled if the impairment equals a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). However, the "equivalency" rationale cannot be used as an alternative basis for satisfying Step Three when a Listing specifically addresses claimant's condition. *Id.* (noting that nothing in the regulations allows a claimant to circumvent the compliance requirement of a Listing by "equaling" rather than "meeting" the listing). An equivalence analysis is only necessary where a claimant has multiple impairments, ***none of which*** meets the listing requirement, but when viewed in the aggregate are equivalent to a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); 20 C.F.R. § 404.1525(c)(5) ("If your impairment(s) does not meet the criteria of a listing, it can medically equal the criteria of a listing.") "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an

equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683.

As discussed above, Plaintiff has an impairment that met the first prong of § 12.05C - his verbal IQ score is between 60 and 70. However, additional physical impairments of hearing loss and back injury, were not sufficiently severe to fulfill the second prong. Further, Plaintiff did not submit any medical evidence that a combination of his impairments equaled a Listing. *Sullivan*, 493 U.S. at 531 ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."). ALJ Farris was not required to perform an "equivalency" analysis because Plaintiff's impairment was specifically addressed in Listing 12.05C and he did not submit any medical findings that a combination of impairments not addressed in the listings were equivalent in severity to the criteria of a Listing.

**B. <u>Duty to Develop the Record</u>**

Plaintiff asserts that ALJ Farris' duty to develop the record required her to order a consultative examination. *Doc. 17* at 13-16. While an ALJ has the duty to develop the record, the Commissioner has broad latitude in determining whether to order a consultative exam. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). Generally, an ALJ should order a consultative exam where there is a direct conflict in the medical evidence requiring resolution, where the medical evidence in the record is inconclusive, or where additional tests are required to explain a diagnosis already contained in the record. *Id*. (internal citations omitted); *see also* 20 C.F.R. § 416.919a (describing the

situations that may require a consultative examination).

The medical evidence in this case is not conflicting or inconclusive, and additional tests were not required to explain a diagnosis contained in the record. Citing *Madrid v. Barnhart*, 447 F.3d 788 (10th Cir. 2006), Plaintiff contends that he established the "possibility of the existence of a disability" and that a resulting consultative exam would be of assistance in resolving the issue. *Doc. 19* at 4. In *Madrid*, the record contained evidence that the claimant underwent a rheumatoid factor test; however, the results of that test were not in the record. Despite evidence of the existence of the rheumatoid test, "the ALJ apparently dismissed the possibility of a rheumatological disorder because 'the record . . . [contained] no evidence of results of a rheumatology work-up.'" *Id.*, at 791 (quoting the record). The court found that the ALJ should have developed the record by obtaining the rheumatoid factor test "in existence at the time of the hearing and apparently available, and the ALJ was aware the test was performed. " *Id*.

Here, Plaintiff contends that ALJ Farris failed to develop the record with regard to his cognitive functioning. However, as Plaintiff himself points out, evidence in the record establishes that he had a learning disability, a verbal IQ between 60 and 70, and he was reading below grade level. Plaintiff does not point to additional evidence in existence at the time that would further develop Plaintiff's cognitive functional abilities. Because the evidence available established Plaintiff's low cognitive functioning, a consultative exam was not necessary.

**C. <u>Findings at Step Four</u>**

There are three phases of evaluation that an ALJ must complete at Step Four:

first, the ALJ must determine a claimant's physical and mental RFC; second, she must determine the physical and mental demands of the claimant's past relevant work; third, she must determine whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). Plaintiff alleges the ALJ erred at phase one in determining his mental RFC.

ALJ Farris found that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple routine tasks, with occasional and superficial interaction with the public and coworkers. Additionally work cannot involve any math calculations." AR 16. Plaintiff does not challenge the ALJ's findings with regard to his physical capacity but concentrates on his alleged mental limitations. Plaintiff alleges ALJ Farris' determination of his mental RFC was in error because she improperly discounted his testimony, failed to include limitations from his education levels, and improperly assessed medical source opinions. *Doc. 17* at 16-22.

1. Credibility

An RFC determination must be based on the entire record, including the credibility of the plaintiff's subjective complaints. *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009) (citing 20 C.F.R. §§ 416.929, 416.945). Accordingly, "the ALJ's credibility and RFC determinations are inherently intertwined." *Id*. at 1171. Courts generally defer to the ALJ's credibility finding, because "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168,1173

(2005) (internal quotation and citation omitted). However, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id*. While the Tenth Circuit "does not require a formalistic factor-by-factor recitation of the evidence," the ALJ must set forth the specific evidence relied upon in evaluating the claimant's credibility. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (internal citation and quotations omitted).

ALJ Farris' credibility findings are affirmatively linked to substantial evidence. For example, Plaintiff testified that he was unable to work due to depression, problems with hearing, and back pain. However, he was able to spend three hours at a time playing video games, assist in cleaning the yard and the house, spend time outdoors going for walks, riding his bike, camping, and fishing. Further, Plaintiff was able to work as a dishwasher for over two years before quitting because he was not getting the hours he requested, not due to his impairments. *Id*. This substantial, uncontroverted evidence sufficiently supports ALJ Farris' conclusion that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments are not credible (AR 17). Thus, the Court will defer to ALJ Farris' credibility determination.

2. Limitations from Education Levels

Plaintiff contends that ALJ Farris' RFC and hypothetical question to the vocational expert were erroneous because she failed to include that he was reading at a 1st grade level at the age of 18. *Doc. 17* at 19-20. There is no evidence that Plaintiff was reading at a first-grade level when he was eighteen. Plaintiff points to a "conflict in the evidence" that an educational evaluation states he performed at a ninth-grade reading level although he was evaluated as reading on a first-grade level. *Doc. 17* at

14. Plaintiff cites to a Multidisciplinary Re-Evaluation Report conducted at Valley High School in 2006. AR 264-65. A table under the heading "Student Information shows a "1" under the heading "Reading/Writing Level." AR 264.The table shows the date as 9/3/1997, when Plaintiff would have been nine-years-old. AR 264. The date of the Multidisciplinary Re-Evaluation Report is 2006, when Plaintiff was eighteen-years-old. AR 263. The 2006 evaluation states that according to a test administered in 2004, when Plaintiff was sixteen-years-old, Plaintiff was reading at a ninth-grade level. AR 265. Accordingly, there is no conflict in the evidence and ALJ Farris did not err by excluding facts in her RFC that are not supported by the record.

Plaintiff further contends that the ALJ's finding that Plaintiff could perform jobs with a reasoning level of two is inconsistent with limiting him to jobs with simple, routine tasks, and no math calculations. *Doc. 17* at 20. This argument is foreclosed by decisions in this circuit that a limitation to simple and routine tasks is consistent with the demand of level two reasoning. *See Stokes v. Astrue*, 247 F. App'x 675, 684 (10th Cir. 2008) (citing *Hackett*, 395 F.3d at 1176).

3. Medical Source Opinions.

Treating and examining physicians may offer an opinion with regard to the claimant's symptoms, diagnosis, and prognosis, as well as work-related physical and mental limitations. *Castellano v. Sec'y of Human Services*, 26 F.3d 1027, 1029 (10th Cir. 1994). The Commissioner will generally give greater weight to the opinion of an examining physician than to one who has not examined the claimant. 20 C.F.R. § 416.927(c)(1); 20 C.F.R. § 404.1527(c)(1). An ALJ must give specific, legitimate reasons for completely rejecting a medical source opinion. *Langley v. Barnhart,* 373

F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). While an examining physician's opinion is not entitled to the deference of a treating physician's opinion, the ALJ is still required to consider an examining physician's opinion and provide specific, legitimate reasons for rejecting it. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citations omitted).

Dr. Padilla performed a one-time exam of Plaintiff in May of 2007, when Plaintiff was eighteen. Dr. Padilla opined that Plaintiff had marked limitations[5] in several work-related activities. AR 533-37. Plaintiff criticizes ALJ Farris for according no weight to Dr. Padilla's opinions. In her decision, ALJ Farris found that Dr. Padilla's opinions were without substantial support from other evidence in the record. For example, she explains that Plaintiff received low grades in school because he did not attend classes, he has the ability to function in his daily activities, and he enjoys leisure activities such as camping, fishing, riding his bike, and playing football. He is able to groom and care for himself, assist in all manner of household chores, retain the attention to play video games for several hours at a time, and sustained gainful employment in the years following Dr. Padilla's assessment, all of which is inconsistent with Dr. Padilla's findings of marked limitations. Additionally, a reviewing physician reported in 2010 that Plaintiff had no significant mental functional limitations. AR 500, 502.

While ALJ Farris did not list all of the evidence noted above while discussing the

---

[5] The regulations explain:

> Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00C.

weight she afforded Dr. Padilla's opinions, her determination that his opinions were inconsistent with the record as a whole, as well as her discussion of the evidence throughout her decision, is sufficient to provide the Court with an adequate understanding of her reasoning. Remand under these circumstances is not warranted. As the Tenth Circuit has instructed:

> Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.

*Keyes-Zachary v. Astrue*, 695 F. 3d 1156, 1166 (10th Cir. 2012).

Plaintiff further argues that ALJ Farris failed to discuss the weight afforded Dr. Chiang's opinions. While generally, an ALJ must give consideration to all of the medical opinions in the record, where the medical opinions are not inconsistent with the ALJ's RFC, any failure to specify the weight given to the opinion is harmless. *See Keyes-Zachary*, 695 F. 3d at 1162-1166.

Dr. Chiang conducted a records review in 2007 and found that Plaintiff had moderate limitations in two of four work-related functional activities (AR 529),[6] and ultimately concluded that "[c]laimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." AR 532. Plaintiff's RFC is consistent with Dr. Chiang's conclusions. By including in her RFC that Plaintiff was limited to "simple

[6] Dr. Chiang indicated that Plaintiff was moderately limited in his restriction of activities of daily living and in his ability to maintain concentration, persistence or pace. AR 529.

routine tasks, with occasional and superficial interaction with the public and coworkers," ALJ Farris accounted for the moderate impairments found by Dr. Chiang. Further, Dr. Chiang's performed her assessment prior to Plaintiff's definitive demonstration that he is able to sustain gainful employment. "There is no reason to believe that a further analysis or weighting of this opinion could advance Plaintiff's claim of disability", *see Keyes-Zachary*, 695 F.3d at 1163, and therefore, the alleged error is harmless. *Id*.

Plaintiff argues that ALJ Farris failed to express his mental limitations in her RFC in terms of work-related functions. *Doc. 17* at 18. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related mental functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'"[7] *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished) (quoting SSR 96-8p, 1996 WL 374184 at *6). In this case, ALJ Farris found that Plaintiff "did not allege any significant functional limitations related to any mental problems" and that "the medical evidence as a whole does not show any significant functional limitations," that would prevent Plaintiff from engaging in work-related activities. AR 19-20.

Plaintiff does not specifically challenge these findings except to the extent he contends the ALJ failed to properly address the medical opinions of Dr. Padilla and Dr. Chiang. Since ALJ Farris did not err in her assessment of the medical evidence (or any alleged error is harmless), she was not required to express Plaintiff's alleged mental impairment in terms of work-related functions in her RFC, as she found no significant

[7] Examples of work-related mental functions includes the abilities to understand, carry out, and remember simple instructions, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting. *Jaramillo v. Colvin*, 576 F. App'x 870, 875 (10th Cir. 2014) (unpublished) (citing SSR 85-15, 1985 WL56857 at *4).

mental limitations.

Finally, Plaintiff criticizes ALJ Farris for failing to include any limitations in his RFC related to adapting to changes in the workplace, working without supervision, or interacting with supervisors. *Doc. 17* at 17. "When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8P, 1996 WL 374184 at *1. The only information in the record that Plaintiff has a limitation with regards to changes in the workplace and interaction with supervisors comes from Dr. Padilla's report, which the ALJ properly discounted. Accordingly, ALJ Farris was not required to include these limitations in the RFC.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand (*Doc. 17*) is denied and this matter is dismissed with prejudice.

**IT IS FURTHER ORDERED** that a final order enter concurrently herewith.

Karen B Molzen

UNITED STATES CHIEF MAGISTRATE JUDGE